**H. Gabriel MURPHY, Appellant,**

v.

**WASHINGTON AMERICAN LEAGUE BASE BALL CLUB, INC., et al.,**
**Appellees.**

**No. 17630.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 10, 1963.

Decided July 18, 1963.

---

Mr. Edmund D. Campbell, Washington, D. C., with whom Mr. Daniel Webster Coon, Washington, D. C., was on the brief, for appellant.

Mr. Roger Robb, Washington, D. C., for appellees.

Before FAHY, WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a minority stockholder's derivative suit, brought chiefly to challenge certain salary increases voted by the board of directors of the appellee corporation to members of the board—and others—for their services as officers and employees. The District Court denied a preliminary injunction against payment of the increases, and this appeal followed.

The plaintiff-appellant, H. Gabriel Murphy, owns or controls over 40% of the stock of the Washington American League Base Ball Club, Inc., a District of Columbia corporation. In late 1960 and early 1961, over appellant's objection, the corporation moved its base ball team and its headquarters from Washington to Minnesota.[1] The officers, directors and principal employees moved to Minnesota, with the exception of appellee Eugene V. Young, a director and the company's treasurer, who remained in the District of Columbia.

Appellee Calvin Griffith and his sister Thelma R. Haynes control some 51% of the stock of the corporation, and are its president and vice-president, respectively. They are also members of the board of directors, along with Joseph W. Haynes, executive vice-president and husband of Thelma R. Haynes; Eugene V. Young, treasurer; and Oswald L. Bluege, comptroller.

---

1. Litigation brought by Mr. Murphy to prevent the move was unsuccessful. See Murphy v. Washington American League Base Ball Club, Inc., 105 U.S.App.D.C. 378, 267 F.2d 655, cert. denied, 361 U.S. 837, 80 S.Ct. 89, 4 L.Ed.2d 77 (1959); Murphy v. Washington American League Base Ball Club, Inc., 110 U.S.App.D.C. 334, 293 F.2d 522 (1961).

In early 1961, the board voted substantial salary increases to most of its own members,[2] in their capacities as officers and employees, as well as to a number of other employees. Plaintiff-appellant complains in particular of the following increases:

| | | | |
|---|---|---|---|
| Calvin Griffith | from | $40,000 to | $75,000 |
| Joseph W. Haynes | from | 22,500 to | 50,000 |
| Sherrard Robertson | from | 16,000 to | 25,000 |
| James K. Robertson | from | 14,000 to | 25,000 |
| William S. Robertson | from | 14,000 to | 25,000 |

The Robertsons, who are related to Calvin Griffith and Mrs. Haynes, are employed to direct various aspects of the company's activities. They are not members of the board of directors.

Appellant, on discovering the salary increases some months later, brought suit in the United States District Court for the District of Columbia. An amended and supplemental complaint was filed in February 1962, naming as defendants the corporation, the directors, and the three Robertson brothers. In addition to challenging the salary increases, the complaint charges that plaintiff has been excluded from the board of directors, that unduly low dividends have been paid, that certain defendants have received improper expense allowances, and the like. Among the prayers for relief is a request for the dissolution of the corporation and distribution of its assets. Service was obtained on the corporation and Mr. Young. The other defendants remain unserved. On October 3, 1962, a motion for preliminary injunction was filed by appellant, seeking (in principal part) to enjoin the corporation from paying to the individual defendants in the so-called "Griffith-Robertson benefici- aries" group[3] any salaries in excess of those paid prior to the 1961 increases. The motion, after affidavits and other materials had been submitted by both sides, was denied by the District Court.

### I.

■ Appellant's main contention is that since the board voted salary increases to most of its members, the rule against self-dealing vitiates the board's action as a matter of law. We cannot agree. In a closely-held corporation, where the directors are officers and majority stockholders, self-dealing on salary questions may be inevitable as a practical matter,[4] and does not render the board's action void. Whether the board's action is voidable depends on all the circumstances, including a consideration of the reasonableness of its action.[5]

■ We think the District Court was amply justified in denying the preliminary injunction against payment of the salary increases.[6] The materials before it could reasonably be regarded as showing that when the corporation's operations were centered in Washington it had insufficient profits to pay adequate salaries; that the move to Minnesota was

---

2. Eugene V. Young, treasurer, received an increase from $5,000 to $7,500, of which appellant does not complain. Thelma R. Haynes apparently received no increase in her $5,000 salary. Appellant seeks to have this reduced to $1,500. Oswald L. Bluege, comptroller, was raised from $18,000 to $25,000, but appellant does not complain of this.

3. Griffith, Haynes, Mrs. Haynes, and the three Robertsons.

4. See II Washington & Rothschild, Compensating The Corporate Executive 864 et seq. (3d ed. 1963).

5. See I Washington & Rothschild, op. cit. supra at 214.

6. A preliminary injunction was also requested against the payment of travel and other expenses of the "Griffith-Robertson beneficiaries." This was denied. Appellant's brief makes no special point on this subject. We think the general

a profitable one; and that salaries more in line with what other baseball companies were paying became possible for the first time as a consequence of the move. Further, and perhaps more important, there was no showing that appellant would be irreparably injured by the continued payment of the increased salaries. Also important was the fact—noted by the court—that the appellant was not trying to maintain the status quo, but was trying to roll back the salaries under attack to the level prevailing some two years earlier.

We observe that we are not, by anything said in this opinion, determining the merits of appellant Murphy's grievances. Such a determination must await a trial. We are dealing only with the question whether the District Judge abused his discretion in denying a preliminary injunction, and we decide that he did not.

It must further be noted that the so-called "Griffith-Robertson beneficiaries," whose salary increases are sought to be enjoined and rolled back, have not been served with process. They are not before the court. They may well be necessary parties in any litigation seeking to enjoin salary payments to them, compare Balter v. Ickes, 67 App.D.C. 112, 89 F.2d 856, cert. denied, 301 U.S. 709, 57 S.Ct. 941, 81 L.Ed. 1363 (1937), though this has not been argued to us and we do not pass on the point. We also note that the District Court can on its own motion—or otherwise—consider whether this case is properly triable in this jurisdiction, under the doctrine of *forum non conveniens*. Cf. Koster v. Lumbermens Mutual Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); Gross v. Owen, 95 U.S.App.D.C. 222, 221 F.2d 94 (1955). Transfer to a Federal court sitting in Minnesota, where the "Griffith-Robertson beneficiaries" reside, may perhaps be possible. Cf. 28 U.S.C.

§§ 1401, 1695; Schoen v. Mountain Producers Corp., 170 F.2d 707, 5 A.L.R.2d 1226 (3d Cir., 1948); Montro Corp. v. Prindle, 105 F.Supp. 460 (S.D.N.Y. 1952). If not, the courts of Minnesota would seem to offer an appropriate forum, see Tasler v. Peerless Tire Co., 144 Minn. 150, 174 N.W. 731 (1919), though again this is a point we need not decide. We mention these matters because they may well have entered—and properly so—into the District Judge's thinking when he considered whether or not to exercise his discretion in favor of the plaintiff-appellant. Cf. Marcello v. Kennedy, 114 U.S.App.D.C. 147, 312 F.2d 874 (1962), cert. denied, 373 U.S. 933, 83 S.Ct. 1536, 10 L.Ed.2d 692 (1963).

## II.

In addition to an injunction against payment of the salary increases, plaintiff-appellant asked "that counsel for the defendant corporation be enjoined from further representation of any of the Griffith-Robertson beneficiaries in the subject-matter of this action." This was denied.

The request was, of course, inartfully drawn, since the Griffith-Robertson beneficiaries have not been served in this litigation, and strictly speaking have not been represented in it. The sole director who has been served is appellee Young, and apparently appellant does not object to his being represented by counsel for the corporation. Under the circumstances, the denial of the request, as made, will be affirmed.

A serious question has thus been raised, however, upon which we think we should comment. Counsel for the corporation, as we have noted, represents appellee Eugene V. Young, and has filed a joint answer for the corporation and Young, defending the challenged transactions on the merits.[7] He has also filed materials on their joint behalf

---

reasoning given above as to salaries covers the travel expense matters also. Litigation expenses are discussed later.

**7.** It may be that the corporation's answer was subject to a motion to strike, as being

a partisan defense of the management. See Meyers v. Smith, 190 Minn. 157, 251 N.W. 20 (1933), noted, 43 Yale L.J. 661 (1934). No such motion was made, however, and we do not pass on the point.

resisting on the merits the motion for a preliminary injunction. The record shows that the corporation has authorized the payment from the corporate treasury of the expenses and counsel fees of the individual defendants.

We said in Milone v. English, 113 U.S. App.D.C. 207 at 210, 306 F.2d 814 at 817 (1962), in words which seem as applicable to stockholders' derivative suits as to union litigation:

> "The treasury of a union is not at the disposal of its officers to bear the cost of their defense against charges of fraudulently depriving the members of their rights as members. It is clear the complaint in this case charged individual officer defendants with conduct which was seriously detrimental to the interests of the International and to the rights of its members. And in deciding whether or not union funds may be used to defend such a suit the final outcome of the charges is not determinative; for if the charges have substance a sound resolution may be prevented by the very fact of dual representation during the process leading to a decision with respect to the charges. Different counsel would be required in this process. In other words, counsel who are chosen by and represent officers charged with the misconduct, and who also represent the union, are not able to guide the litigation in the best interest of the union because of the conflict in counsel's loyalties. In such a situation it would be incumbent upon counsel not to represent both the union and the officers."

■ True, the complaint in the instant case charges "misconduct" and "improper and wrongful acts," rather than fraud or criminality. But we think the principle of the Milone decision may be found to apply here, requiring that the corporation and the individual defendants be separately represented. Cf. Marco v. Dulles, 169 F.Supp. 622 (S.D. N.Y.1959); Essential Enterprises Corp. v. Dorsey Corp., 182 A.2d 647, 654 (Del. Ch. 1962).

As to the propriety of the corporation's paying the legal expenses and counsel fees of the individual defendants in the present litigation, we think final settlement of this question must await the termination of the suit.[8] If in the light of the result of the litigation and applicable provisions of law the individual defendants are found to be entitled to indemnification in whole or in part, the corporation can, of course, effect such indemnification.[9] If the directors authorize payments of this sort by the corporation prior to final judgment, they do so at the risk of being held liable to the corporation for the amounts of any such payments which are ultimately determined to have been improper. Whether they or the corporation can or should be enjoined from making any payments prior to final judgment is not before us: no request was made for such an injunction.

\* \* \* \* \*

For these reasons, the order of the District Court will be affirmed, without prejudice to further proceedings authorized by law and not inconsistent with this opinion.

So ordered.

---

8. For a general discussion of the whole subject, see Washington & Bishop, Indemnifying The Corporate Executive (1963).

9. Compare D. C. Business Corporation Act, D.C.Code § 29-904(p) (1961); Minn. Stats.Anno. § 301.09(7) (Supp.1961); Washington & Bishop, op. cit. supra note 8, at 75 et seq., 112 et seq., 169 et seq.