W. Paul Ward and Imperial Elevator Co., an Illinois Corporation, Plaintiffs-Appellees and Cross-Appellants, v. Dean L. Colcord and Leonard E. Tooke, Defendants-Appellants and Cross-Appellees.

Gen. No. 50,663.

First District.

April 25, 1969.

Gerard A. Serritella, of Chicago (Gerard A. Serritella and Philip J. McGuire, of counsel), for appellants.

Schwartz & Gutstein, of Chicago (Julius J. Schwartz, Solomon Gutstein, and Michael F. Zlatnik, of counsel), for appellees.

MR. JUSTICE SMITH delivered the opinion of the court.

The trial court entered a decree finding that the management of this corporation was deadlocked, directed that

the parties sell and dispose of the corporate assets, pay corporate debts and liabilities, and account between themselves as to their respective stock interests within 90 days, or in the alternative that a sale of the elevator company or its assets or its stock would be under the direction of the court. In the meantime, the management of the corporation would be under old officers. The defendants initiated the appeal and the plaintiffs cross-appeal. Both sides appeal from the decision of the court that the corporate management was deadlocked and each side appeals from a finding of the trial court that neither had established fraud against the other or any basis for equitable relief.

The plaintiff-Ward was the president and principal stockholder of the corporation, with his wife and one Schwartz as directors. He died prior to the conclusion of the proceedings in the trial court and proper party substitution was made. He negotiated with Colcord and Tooke to buy into the corporation. After some negotiations with them, an attorney was called in to finalize their agreement and the result was a contract dated December 15, 1962. By its terms, Colcord and Tooke were each to pay $1,500 cash and give a note for $6,000 payable in thirty-six months without interest. Ward then agreed to transfer 24½% of the stock to each of them and an additional ½% when they each paid the balance of his note. The contract carries a December 15, 1962 date as does the minutes of the stockholders' meeting and the directors' meeting. The contract indicates that all documents, including the agreement, stock certificates, and the transfer of cash and notes, were to be executed and delivered at the same time. In fact, the attorney who prepared the documents testified that he advised them that all documents should be signed simultaneously. The record is crystal clear that Colcord and Tooke each paid their $1,500 on February 7, 1963, and each receipted for his stock on that date. The stock book indicates that

each certificate was dated December 15, 1962, and delivered February 7, 1963. Colcord came to work for the elevator on or about December 27, and it was understood between the parties that Tooke would not begin working for the company until its business and financial condition would warrant. The record also indicates that in the latter part of December Mrs. Ward and Schwartz executed their resignation as directors. The evidence is in dispute whether or not these resignations were actually effected or whether they were handed to Mr. Ward by both parties to be used if and when he saw fit. The testimonial record is in dispute as to when many of the transactions took place. The exhibit record would indicate, however, that February 7 was the actual consummation and effective date of the transaction.

█ It is quite apparent that both sides became disenchanted with each other very shortly, that Colcord refused to sign checks for some of the debts of the corporation and refused to sign salary checks for Mr. and Mrs. Ward. In July, 1963, Ward summarily fired Colcord. In October, Ward filed this suit for a rescission of the contract charging fraud. Colcord and Tooke filed their cross-complaint seeking to be restored to their alleged lawful rights as stockholders and directors of the corporation and for damages. The trial court found that the charge of fraud was established by the evidence on neither side and we are constrained to say the findings of both the Master and the Chancellor are correct on this point. We likewise think that the Chancellor was squarely on target when he held that the management of this corporation was deadlocked, gave them 90 days in which to break the deadlock and then provided for a sale of the corporation and its dissolution. The defendants-appellants, of course, contend that December 15, 1962, is the date of the contract, the date of the corporate minutes, the date of the stock, and that it is the magic date when Ward, Colcord and Tooke became officers of the

corporation and functioned as such thereafter. If we accept this date as true, the corporation is nevertheless deadlocked, because those self-same minutes provided that the Board of Directors could function in the corporate manner only by unanimous vote. It is apparent that at and before the time of the institution of this suit, Colcord had refused to sign checks, had refused to pay bills and an order of the court was required to get this done. It is thus transparently clear that the management was deadlocked.

 In support of their December 15 date, Colcord and Tooke cite in their brief Majestic Household Utilities Corp. v. Stratton, 353 Ill 86, 186 NE 522, as holding that "when certificates of stock are officially executed by the corporation to its shareholders they are issued in the ordinary sense." It thus follows, they say, that they were shareholders, their rights began on that day and their duties as directors began on that day. The difficulty with this citation is that it is not a springboard for the defendants' position. In fact, it is actually a pretty much broken-down spring. In both the Illinois reports and Northeastern reports, the citation reads "when certificates of stock are officially executed AND DELIVERED by the corporation to its shareholders they are issued, in the ordinary sense." (Emphasis supplied.) Colcord and Tooke receipted for their stock on February 7 and their own citation correctly cited states unequivocally that this stock was not issued until delivered to them. They paid for it on February 7, for their checks are so dated. The annual report of the corporation for the year 1963, sworn to on January 29, 1963, by W. Paul Ward and filed in the Secretary of State's office on February 4, lists not Colcord and Tooke, but Paul Ward, his wife and Schwartz as the directors and officers of the corporation. Thereafter in March and April, there were bids for job applications, performance bond premiums, bank signature cards and etc., which list Ward,

71

Colcord and Tooke as officers. It thus seems clear to us that there was at one time at or about February 7 a meeting of the stockholders and directors of this corporation and that Ward, Colcord and Tooke became officers. It would also follow, therefore, that there was a meeting at which they were elected and at which the bylaws were amended requiring unanimous consent of the Board of Directors for corporate action. Thus, this record clearly establishes a typical case where a court of equity has the power to liquidate the assets and business of a corporation where it appears "(a) (1) That the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock." Ill Rev Stats 1965, c 32, § 157.86. Since the decree of the trial court was entered and the business has continued under the management of the old directors and without defendants Colcord and Tooke participating, this court has no way to determine the present status of the corporate affairs. Accordingly, the decree of the trial court is affirmed and this cause is remanded to that court with the directions to implement by appropriate proceedings its original decree, by allowing to the parties a reasonable additional time in which to resolve their differences by common agreement or consent, or to voluntarily liquidate the corporation and in default of either to liquidate the assets of the corporation under the supervision of the court and distribute its assets as equity shall require.

Affirmed and remanded with directions.

TRAPP, P. J. and CRAVEN, J., concur.