ROGER F. MORAN, Appellee

v.

MARION CLARK EDSON, JR., KATHRYN L. EDSON, and
DESCO PRODUCTS CARIBBEAN, INC., Appellants

No. 72-1790

United States Court of Appeals

Third Circuit

Argued at Charlotte Amalie December 4, 1973

Filed March 15, 1974

THOMAS D. IRELAND, ESQ., St. Thomas, V.I., *for appellants*

JAMES L. HYMES, III, ESQ. (GRUNERT, STOUT, HYMES & MAYER), St. Thomas V.I. *for appellee*

Before SEITZ, *Chief Judge*, and MARIS and GIBBONS, *Circuit Judges*

## OPINION OF THE COURT

By MARIS, *Circuit Judge*

The defendants, Marion Clark Edson, Jr., Kathryn L. Edson and Desco Products Caribbean, Inc., have appealed from a judgment entered against them in the District Court of the Virgin Islands in an action brought by the plaintiff, Roger F. Moran. Moran and his wife are joint owners of 50% of the stock of Desco, and the Edsons own jointly the remaining 50% of the stock. It appears that Desco was organized in 1960 by Moran and one W. Hugh Maxwell to do business under a franchise from Desco Chemical Company, of Buffalo, New York, manufacturers of roof, wall, swimming pool and other coatings. Moran and Maxwell each owned 50% of the stock of Desco. In February, 1965, Edson purchased the stock of Maxwell in Desco and he entered into a stockholders' agreement with Moran with respect to their respective rights and obligations as stockholders.

The agreement provided in pertinent part:

"1. The three directors of the corporation shall be the parties hereto and a third party to be agreed upon.*

"2. Edson shall be the President of the corporation and shall have final responsibility and authority in the management thereof.

"3. Moran shall be the Secretary-Treasurer of the corporation.

"4. Edson shall have the sole responsibility and authority of the corporation bank accounts and shall be authorized to draw funds therefrom on his signature alone.

---

* By agreement Mrs. Edson was elected the third director.

"5. Each of the parties shall draw basic salaries of $6,000.00 per year. Should there be funds available, Edson shall draw an additional sum· as salary up to an additional $12,000.00 per year. Should business and receipts above that warrant, the parties may draw additional equal salary bonuses.

"6. Moran will provide warehouse and office space for the corporation without charge."

Difficulties and disagreements arose between Moran and Edson over the operation of Desco and their respective rights and obligations with respect to it. About a year prior to December, 1966 Moran commenced charging Desco $75.00 per month for the space which he had agreed to provide without charge. In that month Edson transferred the corporate operations to space owned by a third party. Then on April 1, 1967 he transferred the operations to space which Desco leased from a corporation wholly owned by the Edsons. In July, 1967 the Edson majority of the board of directors removed Moran as secretary and treasurer and terminated his $6,000.00 annual salary. The present suit by Moran followed. The complaint alleged that Moran had been wrongfully removed as a director and officer of Desco and denied his salary and that the Edsons had assumed complete control of the corporation, all in violation of the stockholders' agreement between Moran and Edson, and that the Edsons had unlawfully and corruptly voted themselves excessive salaries and other benefits and had mismanaged, misused and misappropriated substantial funds and assets of the corporation. The complaint asked for an accounting by the Edsons, an injunction against further mismanagement and misappropriations by them and an order removing them as directors and officers and directing a new election. It was alleged that Desco was not joined as a party plaintiff because the Edsons constituted a majority of its board of directors and any demand upon them for such action would have been futile. The suit is, therefore, at least in

part, in the nature of a stockholders' derivative action. Separate answers were filed by the Edsons and by the corporation.

The case was tried by the district court without a jury. Voluminous testimony and numerous exhibits were received in evidence. Thereafter the district court filed its opinion and judgment. The judgment ordered

"1. That defendant Marion Clark Edson, Jr., pay to Desco Products Caribbean, Inc., the sum of $6,000 as reimbursement for over-payment of salary received for the calendar year 1971;

"2. That defendant Marion Clark Edson, Jr. and Kathryn L. Edson pay to Desco Products Caribbean, Inc. the sum of $8,255 as reimbursement to the said corporation for rental income improperly charged and received from December, 1966 to April, 1972, and that the said defendants further pay to the aforesaid corporation any additional sums improperly collected between the month of April, 1972 and the date of this Judgment; a sum to be computed at the rate of $127 per month;

"3. That the defendants, Marion Clark Edson, Jr. and Kathryn L. Edson, pay to defendant Desco Products Caribbean, Inc., the following:

"a. The sum of $2,735.63 as reimbursement to the said corporation for health and life insurance, a premium improperly charged to the corporation on their behalf;

"b. The sum of $1,239 to reimburse the aforesaid corporation for personal attorney's fees of the said defendants improperly disbursed by them from corporate funds;

"c. The sum of $249.25, reimbursement for miscellaneous personal expenditures improperly charged against and paid from the corporate account;

"4. That defendant Desco Products Caribbean, Inc. pay to plaintiff, Roger F. Moran, the sum of $28,250, salary due to him as secretary-treasurer of the aforesaid corporation from July 3, 1967 through December 31, 1971. From this award, however, the corporation is entitled to and shall deduct the sum of $8,645 to reimburse the said corporation for rents improperly charged to it by reason of the default of plaintiff in his obligation to the corporation, together with an additional reduction for any rents

170

improperly paid by the corporation between April, 1972 and the date hereof, computed at the rate of $133 per month;

"5. That defendants Marion Clark Edson, Jr., and Kathryn L. Edson be, and they are hereby enjoined and restrained from obstructing the right of plaintiff to perform his duties and receive his salary as secretary-treasurer of Desco Products Caribbean, Inc.; said defendants are further enjoined and restrained from any conduct as officers, directors or employees of Desco Products Caribbean, Inc., which confers any financial benefit upon them or either of them as individuals without the approval of a majority of the disinterested directors or shareholders;

"6. That defendant Kathryn L. Edson be, and she is hereby enjoined from acting as an officer or employee of Desco Products Caribbean, Inc., unless said positions shall be ratified by a majority of the disinterested directors or shareholders of the corporation; and

"7. That plaintiff recover his costs herein and reasonable attorney's fees in the amount of $1,750 from defendants Marion Clark Edson, Jr. and Kathryn L. Edson. The sum herein above mentioned to be paid by each of the parties shall bear interest at the rate of six per cent (6%) per annum from the date hereof until the sum shall have been paid."

From this judgment the appeal now before us was promptly taken by all three defendants, Edson, Mrs. Edson and Desco. Counsel of record for Desco on the appeal filed two motions, one to delete Desco from the appeal and the other for leave to withdraw as counsel. The former we have denied in the interest of justice. The latter we have granted in the special circumstances of the case.

Before discussing the defendants' contentions on appeal we consider the background out of which this case arises. In this regard the district court found:

"Under this agreement [the stockholders' agreement quoted above], the parties took their agreed positions and worked together with some success until sometime in 1966 when friction arose. . . .

"The parties' judgment on questions of office expenditures, salary accounting and other matters differed radically. They also

disagreed over plaintiff's performance under the agreement requiring him to supply office and warehouse space. Communication deteriorated rapidly from that point, and in December, 1966, the defendants moved the corporate office out of Moran's quarters and into a building which another corporation of theirs had purchased, effectively severing whatever had remained intact of their original working arrangement . . . .

. . .

"However, the defendants were not alone in their misconduct. Under the shareholders' agreement plaintiff had obligated himself to provide office and warehouse space without charge for the corporation, but in 1966 he indicated that he would no longer provide office accommodations, and there also developed a dispute over warehouse facilities after he began charging $75 per month for them. Although the parties disagreed over the circumstances surrounding these failures on Moran's part, it is evident that he did cease to comply with the agreement.

"The final confrontation occurred in Mid-1967, when plaintiff as secretary of Desco refused to call the annual meeting of stockholders because the financial statement for the corporation's fiscal year had not been made available, and he insisted he would require ten days from the date of receipt to review the records before the meeting. In June, defendants fired Moran from his office as secretary for this refusal, and at a special meeting of the board of directors, they voted to ratify this action—plaintiff, of course dissenting."

Moran testified that at the end of 1965, when his construction business began to slacken, he wanted to take an active part in the management of Desco, but Edson was unwilling. In January, 1967 Moran requested that a special stockholders' meeting be held on January 20th, but Edson, in a letter dated January 18, 1967, rejected the holding of such a meeting but suggested that an informal meeting be held where their differences might be discussed. Nonetheless Moran and his wife held a stockholders' meeting on January 20, 1967 of which Moran took minutes and recorded a motion which, inter alia, formed a committee comprised of Edson and Moran to co-direct the Desco operation and co-sign checks. A copy of the minutes was

sent to Edson. Moran further testified that the annual stockholders' meeting was called by Edson for July 18, 1967 and was attended by the Morans and the Edsons,[1] at which the Morans expressed their willingness to sell their stock to the Edsons. At the meeting of the board of directors which followed, Edson stated that there would be a proceeding to dissolve the corporation, to which Moran objected. There was testimony that there were meetings to end their differences and later there were negotiations, through counsel, to terminate their association. Moran wanted to sell his interest to Edson but they could not agree upon a price and Edson wanted to dissolve the corporation, to which Moran would not agree. And after the present action was brought in December, 1968 Moran asked the district court for an order directing Edson to purchase Moran's share and the Edsons, in their memorandum to the trial judge following the trial of the case, asked that a receiver be appointed. Thus, as can be seen, the two factions were in hopeless deadlock. The only matter upon which they did agree was that each would like to be released from the relationship, but they obviously could not agree upon the procedure or the price whereby this could be accomplished.

We turn then to the appellants' contentions on this appeal. We consider first their contention that the district court erred in directing, by paragraph 4 of its judgment, the payment by Desco to Moran of $28,250 salary as secretary-treasurer from July 3, 1967, the time he was removed from those offices by the Edson majority of the board of directors until the end of 1971, and, by paragraph 5, his restoration as secretary-treasurer. These actions of

---

[1] The wife of each party owns jointly the 50% of stock with her husband. There is no evidence or suggestion that either wife ever did or would cast a vote other than in conformity with her husband's vote. Accordingly, each wife is a part of the separate faction which was created by the schism between Edson and Moran and for the purposes of this appeal, Edson and Moran may be regarded as the sole stockholders of Desco.

the court were based upon its conclusion that Moran's dismissal was in violation of the stockholders' agreement which the court held binding upon Edson in spite of Moran's breaches of the agreement, which the court characterized as minor. We cannot so characterize them, however. Moran admitted on cross examination that his salary under the stockholders' agreement was paid to him for the services which he was required under the agreement to perform, namely, to recognize Edson's rights and management responsibility, to perform the duties of secretary-treasurer, and to provide warehouse and office space without charge. By July, 1967 Moran was in default in the performance of each of these services. Under these circumstances, Moran's default cannot properly be characterized as minor. It was in fact a complete and total failure on his part to perform his obligations and amounted to an abandonment of the agreement. For such a total failure of consideration Edson was fully justified in treating the stockholders' agreement between them as rescinded and no longer binding. Restatement, Contracts §§ 274, 275, 317; Callanan v. Powers, 1910, 199 N.Y. 268, 92 N.E. 747; Sheehan v. Hepburn, 1958, 37 Del. Ch. 90, 138 A.2d 810; Maytag Company v. Alward, 1962, 253 Iowa 455, 112 N.W.2d 654; 17 Am. Jur. 2d Contracts, §§ 502, 503, 504, 505. We have examined the case of Sternheimer v. Sternheimer, 1967, 208 Va. 89, 155 S.E.2d 41, upon which the district court relied in this connection, but we do not regard it as controlling under the facts of the present case. Moran's claim to receive salary without performing services depends solely upon the continued validity of the stockholders' agreement. Accordingly, upon the justified recision of that agreement by Edson, Moran's right to further salary as well as his further services as secretary-treasurer became subject to the discretionary action of the board of directors of Desco. The board having dismissed him as an officer and termi-

nated his salary in July, 1967 its action is not subject to review in this proceeding. Paragraph 4 of the judgment and the first clause of paragraph 5, which in effect requires the Edsons to reinstate Moran as secretary-treasurer and resume payment of his salary must, accordingly, be reversed.

■ We turn next to Edson's contention that the district court erred in directing him by paragraph 1 of the judgment to return to Desco $6,000.00 of the $24,000.00 salary which he drew in 1971. This action by the court was based upon two considerations, namely, that under paragraph 5 of the stockholders' agreement the payment of this additional salary was improper, and that, in any event, under the applicable rule of law Edson's vote as a director could not be counted in the majority vote by the directors which authorized the additional $6,000.00 payment.

■ We have already indicated that the stockholders' agreement was no longer in force in 1971, having been rescinded by Edson in 1967 because of Moran's total default thereunder. It, therefore, does not furnish support for the district court's conclusion. Nor does the second ground relied upon by the district court furnish such support. For in the case of a closely held corporation, such as Desco, where the directors are also the officers and stockholders, self-dealing on salary questions may be inevitable as a practical matter. At least in such a case, therefore, self-dealing does not of itself render void the action of a board of directors, in which the interested director participated, in fixing the compensation of that director as a corporate officer. Whether the board's action is voidable in such a case at the instance of a non-assenting stockholder depends on all the circumstances, including a consideration of the reasonableness of the action. Murphy v. Washington American League Base Ball Club, Inc., D.C. Cir. 1963, 324 F.2d 394; 5 Fletcher, Cyclopedia

Corporations § 2129. Corporate directors, in fixing their salaries as officers must, of course, have regard for the reasonableness of the salaries in the light of the financial condition of the corporation. Backus v. Finkelstein, D.C. Minn. 1924, 23 F.2d 531; Irwin v. West End Development Company, 10 Cir. 1973, 481 F.2d 34.

There was evidence in this case by the marketing manager of the corporation under franchise from which Desco carried on its business, that the business under Edson's management was well run and very sound, that it had discounted its bills since 1967 and that in the light of the size and volume of the business the salaries of the Edsons were fair and reasonable. The district court made no finding on this subject, however. This aspect of the case must, therefore, go back to that court for a reconsideration of paragraph 1 of the judgment in the light of the evidence and the legal principles which we have enunciated and the modification of the last clause of paragraph 5, so as to permit the payment of fair and reasonable salaries to the Edsons.

■ The Edsons' next contention is that the district court erred in directing by paragraph 3 of the judgment that they reimburse Desco for personal life and health insurance premiums paid by Desco for their benefit. The district court found that these policies were not issued for the benefit of Desco, each individual being named as beneficiary in the policies of the other. The district court stated:

"Directors and officers are not free to appropriate corporate assets in fraud of the stockholders, and any such asset taken for the exclusive benefit of favored principals are recoverable by the corporation, . . . . Nothing less than a unanimous ratification by the shareholders can validate such personal use of the corporation's funds and property. The Edsons, by their own admissions, have violated this rule of fiduciary responsibility and even if, as

176

it appears, this violation was guileless, their obligation to indemnify the corporation remains."

We are in complete accord with these conclusions. The case of Mutual Life Insurance Company of New York v. Mooreman, 9 Cir. 1966, 366 F.2d 686, upon which the Edsons rely, is wholly distinguishable. No objection was raised in argument to the awards made in subdivisions b and c of paragraph 3 of the judgment. The whole of that paragraph will accordingly be affirmed.

What has just been said is equally applicable to the contention of the Edsons that the district court erred in directing them by paragraph 2 of the judgment to reimburse Desco for rental income, in the amount of $8,255.00 to April, 1972 and $127.00 per month thereafter to the date of judgment, collected from Desco for the office and warehouse space which as majority directors they authorized Desco to lease from their wholly-owned General Services Corporation, after Moran had declined longer to provide the space which he was obligated by the stockholders' agreement to provide to Desco. The district court took the view that as directors of Desco the Edsons were not entitled to realize a profit on this transaction, but merely to recover the cost to them of providing the space, in the absence of approval by the other stockholder, Moran. We think that the district court rightly so held. But we find that the district court erred in its determination of the amount of the profit realized by the Edsons which paragraph 2 of the judgment directed them to repay to Desco. The court found that the Edsons' cost of providing the space was $133.00 per month and its computation was based upon its finding that the period of time involved in the General Services Corporation leasehold commenced with December, 1966 and that throughout the entire period of 65 months from that month through April, 1972 the Edsons realized a uniform profit of $167.00 per month

from the lease, based on a monthly rental of $260.00. None of these findings is supported by the evidence. First with respect to the computations involved: The evidence establishes that in December, 1966 the office and warehouse of Desco were removed by Edson from the space previously provided by Moran. This removal, however, was to space owned by a third party, and it was not until April 1, 1967 that the operations were moved to the space owned by General Services Corporation. The actual period of time during which the Edsons were in a position to receive a profit from the leasing of space to Desco accordingly did not begin until April 1, 1967. It further appears from the testimony that from April, 1967 through April, 1970 the monthly rental charged was only $200.00, indicating; according to the district court's finding of cost, a profit of only $67.00 per month. This would have resulted in a total profit of $2,479.00 for those 37 months. It was not until the end of April, 1970 that the rental was increased to $260.00 per month on the basis of which figure the district court obviously computed the profit of $127.00 upon which it based its award. For the 24 months from May, 1970 through April, 1972 this profit would have amounted to $3,048.00, the total profit for the entire period thus being $5,527.00 instead of $8,255.00, the amount awarded in paragraph 2 of the judgment. We are clear, moreover, that the finding of the district court is erroneous that the Edsons' cost of providing the space was only $133.00 per month. The evidence is that this figure represents the Edsons' mortgage costs only and that in addition there are taxes, maintenance costs and return on capital invested. Moreover, the leases specified that General Services Corporation would provide all utilities except the power required for an air conditioner. This issue must, therefore, go back to the district court for a finding as to the actual amount of profit realized by the

Edsons' wholly-owned General Services Corporation on these rentals and an appropriate recomputation of the sums awarded by paragraph 2 of the judgment.

██ Paragraph 6 of the judgment requires only brief mention. Its effect is to bar Mrs. Edson from serving as an officer or employee of Desco except with the approval of Moran. In view of what has already been said with respect to the practical necessities of a close corporation such as Desco, we thing that the board of directors of Desco is entitled to employ Mrs. Edson at a fair and reasonable rate of compensation and that the broad order contained in paragraph 6 of this judgment is unjustified. It will accordingly be vacated and remanded.

We turn then to the Edsons' final contention, that the district court should have granted their request to appoint a receiver and order dissolution of Desco. It will be recalled that Moran had asked the court for an order directing the Edsons to purchase his 50% interest in Desco at a fair price to be set by the court. However, the district court was of the view that it had no power to grant Moran's request, stating:

"If the orders outlined in this opinion fail to result in a workable business relationship, the parties may negotiate a mutually acceptable settlement themselves."

No such settlement was reached and the Edsons urge that the district court does have the power under 13 V.I.C. § 195 to appoint a receiver "with all the powers of the corporation and the power to continue the corporate business until otherwise ordered by the court" where, as here, the stockholders are deadlocked on the election of directors and management of the corporation. They argue that it was error for the district court not to give them that relief.

13 V.I.C. § 195 implements the general rule that a court of equity may appoint a receiver when there are such

dissentions in the board of directors of a corporation or between two groups of its stockholders, each holding an equal number of shares, that it is impossible to carry on the business with advantage to the parties interested, even though the corporation is solvent. 16 Fletcher, Cyclopedia Corporations § 7713. And in such a case the court may direct the sale of the corporate property for the protection of the creditors and benefit of the stockholders and order a dissolution of the corporation. Saltz v. Saltz Bros., D.C. Cir. 1936, 84 F.2d 246; Weiss v. Gordon, 1969, 32 App. Div. 2d 279; 301 N.Y.S.2d 839; Ward v. Colcord, 1969, 110 Ill. App. 2d 68, 249 N.E.2d 137.

Since this case must be remanded to the district court for further consideration of a number of the issues involved, the court upon remand will have full opportunity to consider whether, in the light of the situation as it may then exist, it will be in the interest of justice to appoint a receiver and thereafter to take such further judicial action with respect to Desco and its property as may best be calculated to resolve the impasse between the stockholders of the corporation.

Paragraph 3 of the judgment of the district court will be affirmed. Paragraph 4 and the first clause of paragraph 5 of the judgment will be reversed. Paragraphs 1, 2, 6 and 7 and the last clause of paragraph 5 of the judgment will be vacated and the cause will be remanded to the district court for further proceedings not inconsistent with the opinion of this court.